The next case this morning is people versus Sloan. Arguing for the appellant Matthew Sloan is Gilbert Lentz. Arguing for the appellate people of the state of Illinois is Ivan Taylor Jr. Each side will have 10 minutes for the argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning, counsel. Good morning. Mr. Lentz, are you ready to proceed? Yes, I am. Then go right ahead. Thank you, your honors. And good morning. Good morning to you and counsel. Gilbert Lentz from the DePaul Legal Clinic on behalf of Matthew Sloan. There are several issues before the court today. This court should reduce Matthew's conviction from first degree murder to second degree murder because the preponderance of the evidence showed that he acted in a subjective but unreasonable belief the self-defense was necessary. But regardless of how this court decides that question, this court should remand for a new trial due to the multiple and serious errors that occurred in this case, from the instructional error to the other crimes evidence to the prosecutorial errors. And then the alternative, if this court affirms Matthew's conviction, it should reduce his sentence because the record does not support the judge's 80-year sentence where Matthew was not devoid of rehabilitative potential and had no history of violence. But I'd like to focus this morning, your honors, on the particular trial error concerning the other crimes evidence and why that error was not harmless. I would be happy to answer any other questions the court has about any of the other issues, though. Your honors, this trial should have been about the 2018 charged offense of first degree murder. But the trial court interfered with Matthew's right to have a fair and impartial jury decide that question when it allowed the state to present evidence of a very old, irrelevant, and highly prejudicial prior incident involving a different person, Matthew's cousin. This was an error in multiple ways, and I'll certainly discuss all of those. But I think it's important to take a step back here for a moment and remind ourselves, other crimes evidence is presumptively inadmissible. And that's why we have a long history in front of the Illinois Supreme Court and the appellate courts of setting up procedural safeguards, multiple layers of procedural safeguards, to ensure that such evidence, given its highly prejudicial nature, is admitted only for a proper purpose. Let me stop you for one minute, Mr. Lindsay, just with an initial concern or question. With regard to the standard of review for the questions that you're raising, what is our standing? As to the other crimes evidence, the question is whether the trial court abused its discretion in admitting that evidence. And as to whether, if this court finds there was error on the prejudice question, the question is whether the state can prove beyond a reasonable doubt that that error was harmless, played no role in the verdict. So a very deferential standard that you need to overcome for us to do anything with this. It certainly is an abusive discretion standard, but every case cited in our brief that remanded for a new trial based on such an error was operating under the same standard. So it's not an unfamiliar standard and it's not an insurmountable standard. Okay, not impossible. All right, thank you. Go ahead. Yes, Your Honor. Thank you. Just to, so it's particularly important. This court, I think doesn't owe as much deference to the trial court in this case because it didn't follow those procedural safeguards that courts have set out. As this court said in Lenly about 20 years ago, it's very important for the trial court when it admits this presumptively inadmissible evidence to actually identify and articulate why it's being admitted. Here, the court simply accepted the state's argument and repeated the reasons that the state gave, but the court didn't articulate those reasons. Perhaps even more importantly, that's not the only step the court must do to admit such evidence. The court must engage in a balancing test to determine whether, even if this evidence is probative, whether it's not overly prejudicial. And here the court never mentioned prejudice once in its analysis. And finally, of course, the court must instruct the jury to only consider this evidence for the limited purpose for which it was admitted. And it must do so at the time it's admitted and after the evidence. There was error in this case at each one of those steps. First, this evidence from the 2004 incident was not admissible for any proper purpose. And that's because such evidence from prior incidents, it must be relevant to proving or to a contested issue regarding the charge defense. So in this case, there was no issue as to the identity of the offender or his intent in pulling the trigger. The 2004 incident had nothing to say about either of those questions because they weren't an issue. So it wasn't admissible for modus operandi. It certainly was not a signature kind of calling card type of incident in the 2004 that would show that was so similar to 2018 that it had to be the same person. We already know who was involved. So it just wasn't relevant for that purpose. It also wasn't relevant for motive. It certainly wasn't relevant for the motive that the state proposed or that the court allowed it for. So the 2004 incident was 14 years old. It wasn't relevant to any contested issue regarding the 2018 offense. And it shouldn't have been admitted in the first place. But it also, I'm sorry. I'm sorry, I'm battling a sinus infection. Understand, I'm sorry, your honor. But even if it was admissible for one of those limited purposes, this 2004 incident was far more prejudicial than probative for any proper purpose. Again, this incident was 14 years old with no intervening incident of a similar nature or relevant nature. And this incident, the 2004 incident was very dissimilar from the charge defense. Mr. Kilbourn did not say that they were fighting or arguing before the incident in 2004. The incidents involved different people at a different location. Importantly, both people involved in the 04 incident lived in this house. Unlike this, the charge defense. And Kilbourn, also very importantly, never said that Matthew pointed the gun at his face. And of course there was no shot fired. So it was already inadmissible for no proper purpose. It was already more prejudicial than probative. And then that error was compounded in multiple ways. Most importantly, the state maximized the prejudice of this error when it not only told the jury to consider it for motive or modus operandi, but then the state explicitly told the jury twice that they could consider the 2004 incident as evidence of Matthew's propensity to put point guns at family members. That is straight up propensity evidence. And that's precisely the reason why this evidence could not have been admitted. But the state ensured that the jury or urged the jury to consider it in that fashion. And finally, your honors, the state cannot meet its burden to show that this error was harmless beyond a reasonable doubt. Because the evidence as to whether Matthew showed by a preponderance of the evidence that he subjectively believed self-defense was necessary boiled down to a credibility contest. And that evidence was sufficiently close that there's simply no way the state can show that this error played no role in the verdict. Matthew. What was close about the verdict or about the evidence that makes this so prejudicial? Well, the evidence here was close because it boiled down to a credibility contest, credibility determination. And the evidence showed, and some of this testimony from Matthew was supported by Sarah too. The evidence showed that both Matthew and David fought in the driveway. They were both highly intoxicated. And it was Matthew who retreated from the fight by entering his own home and closing the door. About 30 seconds later, it was David who came after Matthew. And Matthew knew both that there were guns in the car and that David had time to grab one. So do me a favor. All right. So I agree with you that in so much as an area that I find to be close in this case was the initial aggressor denial of that request for that instruction. Can you address that portion of the case a little bit for us? Oh, absolutely. I know you have 45 seconds and I would ask Justice Bowie for maybe a little additional time for you to do that. Absolutely.  Thank you, Your Honors. Yes. So yes, the standard on the instructional error is whether there was some evidence or some slight evidence to support the instruction. And here we're not talking about the credibility contest. We're just talking about whether there was some evidence that the jury heard that would support a belief that Matthew was not the aggressor inside the home. And here, as I said before, Matthew had just fought this person. He knew the person had access to guns. He knew he had time to grab a gun. He entered Matthew's home through a closed door without knocking, without being invited. And at a point when Matthew still could not see him, Matthew heard him rapidly approaching Matthew's bedroom door. All of those factors, even if this court disagrees that they amount to proving only second degree murder sufficient to reduce his conviction, all those factors are at minimum some slight evidence to indicate that Matthew was not the aggressor inside the home. And that supported the instruction to tell the jury that he did not have a legal duty to retreat because a reasonable jury hearing all that evidence might have wondered, what is Matthew's duty in that position? And the judge denied Matthew's right to have the jury fully instructed when the judge didn't tell the jury Matthew had no legal duty at that point to retreat. So unless there are further questions, your honors, we would ask this court to reduce Matthew's conviction to second degree murder. In addition, or alternative remand for a new trial or reduce the sentence. Thank you. Thank you, Mr. Lentz. Justice Barberis, did you have any follow-up questions? I'll wait until rebuttal. Okay. Justice Moore? No. All right. Obviously, Mr. Lentz, you will have your time for rebuttal. Mr. Taylor, are you ready to proceed? Yes, your honors. And go right ahead. Thank you. Good morning, your honors. Good morning, counselor. My name is Ivan O. Taylor Jr. I'm on behalf of the people in this case. This court should affirm defendant's conviction and sentence for first degree murder for the following reasons. Defendant's failing his burden to prove that he provided proved his mitigation for second degree murder by the preponderance of the evidence. As for the IPI instruction, the trial court did not abuse its discretion in denying the requested instruction. For the 2004 Prior Bad Act incident, the trial court did not abuse discretion when a lot of people to present that evidence to the jury for the purposes of MO, motive, intent, and lack of mistake. The prosecutor did not miss... Let me stop you for one second, Mr. Taylor. Is it O. Taylor or Mr. Taylor? Taylor's fine. O is my middle initial. Gotcha. Okay. I wasn't sure if we were missing... Anyway, with regard to the state's stated reasons for bringing up the 2004 incident, the 14-year-old incident, is that typical that the state would throw everything at the court and say it's modus operandi, it's motive, or does it... I think usually isn't that brought in a more specific context? I can't speak to what was typically done at the trial level with regards to bringing prior bad acts evidence or disorder evidence to the court. But for this particular case, though, for example, for Mozambique, we know pattern of behavior. This incident is actually highly similar to what... From 2004, similar to what happened in 2018. The defendant and his family member, in 2004, it was his cousin, and in 2018, it was his brother. They were drinking all day. From this intoxication, they became... They argued with each other. While the testimony from Mr. Claiborne at trial said he could not recall when he argued with the defendant at the time, the proffer that the prosecutor provided to the court at the motion-eliminated hearing was that Claiborne had informed him at the time that he did argue with the defendant. And after his argument, the defendant, with his shotgun, then pointed his shotgun at Mr. Claiborne in 2004. While obviously in that incident, there was no shots fired, Mr. Claiborne was only recently discharged from the Marines, was able to snatch the shotgun from the defendant's hands. After that happened, the defendant tried to find another gun, which Mr. Claiborne was able to snatch that gun from the defendant as well. And that second handgun, though, if I remember the testimony, the defendant placed that in his own mouth. He wasn't pointing it at his cousin's face. I believe that's what was stated in testimony, if I remember correctly. So at least with regard to the second gun, not necessarily similar to what happened here. That is correct. But similar to that do exist though, where defendant becomes drunk, becomes angered by a family member, argues that family member, grabs a gun to point at that family member, those are all the same. And that's the reason why the people sought to have this evidence introduced. And not for any propensity, but for the purposes of showing motive, lack of mistake, intent, and MO. Okay, so just in regard to the MO aspect of it, typically isn't that evidence, produced to identify a defendant whose identity may not have been known. And that's not the case here, correct? It's true that this is not an issue in this situation. But as I said in my brief, in the case of people, the Bochenek from the second district, it states that the people can provide evidence of MO, especially in situations where the MO, the evidence is so similar, even when identity is not an issue. And I still cannot grasp the reasoning behind the motive for presenting that evidence. Can you elaborate on, was motive a consideration? I believe the prosecutor did state motive as a possible consideration as well as for presenting this evidence. Motive is just meant to do some act. For this situation, for motive, I do believe during the hearing, the prosecutor mentioned the fact that the integration of defendant to drinking alcohol was part of the motive for this act that occurred. And that's the part I don't grasp. I don't understand how being intoxicated or drinking alcohol is a motive to placing a shotgun in somebody's face or putting a shotgun in someone's face is a motive for drinking. I'm not sure how that makes any sense to me. I think, I'm not sure, I cannot argue, I can't say what the prosecutor was arguing at the time, but the motive would be of, the motive would be that this defendant, when present, when defendant becomes intoxicated and has arguments with his family, his first instinct is to go for a gun. And that would be the motive. That, I think the prosecutor unartfully stated how the intoxication by his defendant seems to allow his defendant to come to conclusion that his gun is the best way to deal with his problems. Well, and I am looking at the transcript of that hearing. And it appears to me that the trial judge basically goes through why it shouldn't be allowed, but then finally says, and I'm quoting, I think it's relevant, particularly if the defendant is, is lodging the affirmative defense of self-defense. And so for clarification to help a jury to get the whole story and the big picture, I think that this incident is relevant and I will allow it. So I will grant your motion and limit. That's what the trial court said. So it appears to me that it was the trial court basis really ruling based upon the self-defense claim and how, again, how it said to get the entire picture. Correct? I don't recall the precise wording by trial court from the, but since you have the record in front of you, your honor, this is what he said in the trial courts. Okay. And I don't see in, I'm looking, but I don't see anything in here where the court did go through that prejudice versus probative value. You're right, your honor. Since that hearing was about why not this evidence can come in, the trial court heard the arguments regarding where not it can be for MO, motive, intent, or lack of mistake. And also heard the arguments from both sides as to whether this evidence was more prejudicial than probative. So the trial court heard all those arguments prior to making his decision. So his decision necessarily has to be based upon that particular improper standard, your honor. But you don't disagree that the trial court did not specifically address probative value versus prejudice, right? Correct, the trial court not specifically addressed that, but I do believe case law says trial court does not necessarily have to state in precise details its reasoning for its ruling. Okay, thank you. I believe the defendants also touched upon IPI 3.14, the jury instructions for when this prior by X evidence is used. He states the trial court failed to do, provide the instruction after the evidence was first presented. That's correct, but it's not required. It's only required for the instruction to come in after the closing of final arguments. The instruction was given to the jury. It's even within the list of the jury instructions the jury heard. So that is not an error for the court not to give the instruction more than once. As for harmless error, the defendant is stating that if there was an error in a line of evidence, the people will be able to show that it wasn't right upon. The evidence that the jury utilized in order to find defendant guilty was primarily from Sarah Sloan's testimony. And that's the testimony that they believed to find defendant guilty of first degree murder. From her testimony, she states how after she went to pick up a defendant and her husband, defendant's brother, they quarreled during the drive to defendant's home. They had a mutual fight for about 30 seconds when he arrived there. Once the defendant walked into his home, they followed immediately afterwards. And they were only in home for seconds before defendant shot David Sloan in the face. Let's see, my time's up. May I have a moment to conclude? I'll go right ahead. Finish your comment. All right, thank you. And shot defendant in the face. The reason why that this is not a situation of evidence being closely balanced is that it requires that the evidence provided, that the evidence be something that is credible to understand. Defendant's testimony from the trial and also the evidence presented from this interview, it's beyond not credible. It was something that the jury could not rationally understand to be remotely related to what actually occurred. So that's why closely balanced is not how one can describe the evidence in this case. For the reasons presented in my argument today and also within the brief I provided, the people asked at this court affirmed defense conviction and sentence. Thank you. Thank you, Mr. Taylor. Justice Barberis or Justice Moore, do you have any questions for Mr. Taylor? I don't, not at this time. All right, thank you. Mr. Lenz, go right ahead. Thank you, your honor. First, starting on the prejudice prong that counsel finished with, just to be clear, as to the instructional error and the other crimes evidence error, the prejudice analysis here is a harmless error analysis, not a plain error. So the question is not whether the evidence was closely balanced. The question is whether the state can prove beyond a reasonable doubt that these errors played no role in the verdict. That's a higher burden than the closely balanced evidence prong under the plain error doctrine. And it's a very high burden that the state cannot meet here. I would note that the counsel's argument that the 2004 incident should have come in because it showed that Matthew had a history of getting drunk and pulling guns on family members. That's a propensity argument. That's precisely the reason. What the state cannot do is enter a prior incident for the reason that it shows a pattern of conduct. That's exactly the reason why such evidence should not be admitted. It has to be admitted only for a limited purpose. And that limited purpose has to be relevant to proving a contested question of fact regarding the charge defense. And there was no such contested question here that the 2004 incident spoke to. As one of our cases, the Collins case notes, people getting intoxicated and pulling guns is a common, unfortunately, a common occurrence. The fact that two incidents share those two similarities falls far, far short of qualifying as admissible other crimes evidence under this very high bar that the Illinois Supreme Court has established for such evidence. With regard to the 2004 incident, the court gave a 3.14 IPI instruction at the end of the, at the close of evidence. Do you take issue with the fact that it wasn't given at the time of the evidence as well? Certainly. I mean, that's one of the factors here that this court should consider in determining whether error occurred. Because this is a duty on the court. The trial court, as the Denny court laid out, the trial court has a duty because of the highly prejudicial nature, the presumptive inadmissibility of prior offenses. The trial court has a duty to instruct the jury both at the time the evidence is admitted and at the close of evidence. Here, the judge only did one of those things. And along with all the other errors the court committed here, that was the final one. I mean, I'm sorry, go ahead and finish your thought. I didn't know. No, go ahead, your honor. The initial aggressor instruction is still the biggest thing that I have an issue with in this case. And just generally, all the other instructions that the court did give attended to second degree. Because I think perhaps you may have implied or stated in your brief that second degree instruction was not given. And in fact, it was. And maybe I misread that or not remembering correctly. But does the fact that the second degree self-defense and mitigating factors, does any of that come into play to override the failure to allow for the initial aggressor instruction? Well, first, your honor, yes. The jury was definitely instructed on second degree murder and any implication in the brief to the contrary was incorrect. And it may be my misunderstanding. I'm trying to remember back, but go ahead. Sure, understood. But no, in every case where, if the jury had not been properly instructed on those other questions, we would be here arguing about whether the judge should have given those instructions in every case where an appellate court remains for a new trial due to a failure to give a single instruction, the other instructions were properly given. So the fact that the jury heard those instructions cannot cure the error in failing to get the initial aggressor or the legal duty to retreat instruction 2425.09X. So I think, no, your honor, there's no cure for that. There's no curing effect there. If that answers your question, your honor, I would just conclude by asking if this court reduce Matthew's conviction and or remand for a new trial and the alternative to reduce his sentence. Thank you, Mr. Lenz. Before we finish, Justice Moore or Justice Barberis, any final questions? Nothing further. Nothing. Well, thank you, counsel. Obviously, we will take this matter under advisement. We will issue an order in due course. This.